IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANA WILLIAMS, | 2:11-cv-01844-GEB-DAD |
|     Plaintiff, | |
|   v. | ORDER GRANTING DEFENDANT MILLER'S MOTION FOR SUMMARY JUDGMENT, DISMISSING REMAINING STATE CLAIMS UNDER 28 U.S.C. § 1367(c), & DENYING PLAINTIFF'S REQUEST FOR RELIEF UNDER RULE 56(d) |
| PAMELA MILLER, in her individual capacity; YOLO COUNTY DEPARTMENT OF EMPLOYMENT AND SOCIAL SERVICES, | |
|     Defendants. | |

Pending are Defendant Pamela Miller's ("Miller") motion for summary judgment on Plaintiff Diana Williams' ("Plaintiff") First Amendment retaliation claim alleged under 42 U.S.C. § 1983, and Defendant Yolo County Department of Employment and Social Services' ("DESS") motion for summary judgment on Plaintiff's state law claims. Also pending is Plaintiff's application under Federal Rule of Civil Procedure ("Rule") 56(d), in which she requests that each Defendant's motion "be denied," or, in the alternative, that "the Court continue the hearing date on [the] summary judgment motions [to] allow Plaintiff adequate time to conduct discovery to effectively oppose these motions." (Pl.'s Appl. 4:8-12, ECF No. 20.)

**I. LEGAL STANDARD**

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial.

1

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case." Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

> [The movant] has both the initial burden of production and the ultimate burden of persuasion on [the motion]. In order to carry its burden of production, the [movant] must either produce evidence negating an essential element of the [plaintiff's claim] or show that the [plaintiff] does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. In order to carry its ultimate burden of persuasion on the motion, the [movant] must persuade the court that there is no genuine issue of material fact.

Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000) (citations omitted).

If the movant satisfies its initial burden, "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citation and internal quotation marks omitted). The "non-moving plaintiff cannot rest upon the mere allegations or denials of the adverse party's pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." Estate of Tucker ex rel. Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1030 (9th Cir. 2008) (citation and internal quotation marks omitted).

Further, Local Rule 260(b) requires:

> Any party opposing a motion for summary judgment or summary adjudication [must] reproduce the itemized facts in the [moving party's] Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial.

If the nonmovant does not "specifically . . . [controvert duly supported] facts identified in the [movant's] statement of undisputed facts," the nonmovant "is deemed to have admitted the validity of the facts contained in the [movant's] statement." Beard v. Banks, 548 U.S. 521, 527 (2006).

Evidence must be viewed "in the light most favorable to the non-moving party," and "all reasonable inferences" that can be drawn from the evidence must be drawn "in favor of [the non-moving] party." Nunez v. Duncan, 591 F.3d 1217, 1222-23 (9th Cir. 2010) (citation and internal quotation marks omitted).

## II. FACTUAL SUMMARY

The following factual summary is drawn from Plaintiff's declaration except where noted.[1] Plaintiff Diana Williams was Assistant Director for the Yolo County Department of Employment and Social Services ("DESS"), and was later promoted to Chief Deputy Director. (Decl. Pl. in Supp. of Opp'n Defs.' Mot. Summ. J. ("Pl.'s Decl.") ¶ 3, ECF No. 22-3.) Defendant Pamela Miller was the Director of DESS and was Williams' direct supervisor. For a time, Defendant Miller and Plaintiff

---

[1] Miller objects to a number of the statements contained in Plaintiff's declaration. "However, in light of the . . . resolution of" the public concern issue below, Defendants' evidentiary objections "need not and will not [be] address[ed]." Gibson v. Cnty. of Riverside, 181 F. Supp. 2d 1057, 1080 n.20 (C.D. Cal. 2002).

3

Williams served together on the Executive Leadership Team of the Yolo County DESS. (Id. ¶¶ 4, 8.)

"In the spring of 2009, [Defendant] Miller's partner, Marie Surad-Miller, was seriously ill and had been hospitalized for the previous several months. On one occasion, . . . Miller told [Plaintiff] that her older child, Claire, was sick . . . and was being watched over by her 8-year-old sister, Katie." (Id. ¶ 9.) On another occasion, "Miller [told Williams] that her daughters were at home swimming." (Id. ¶ 10.) When Williams "asked whether [Ms. Surad-Miller] was capable of watching the girls," "Miller chuckled and said that it was the other way around, the girls were taking care of" Ms. Surad-Miller. (Id.) As a result, Plaintiff became concerned about the possibility of child neglect and "thought somebody should make a report" to Child Protective Services. (Id. ¶ 13.)

Plaintiff contacted Sacramento Child Protected Services ("CPS") at or near the end of June 2009. (Id. ¶ 14.) Plaintiff states that she contacted Sacramento County CPS, instead of Yolo County, because "a report to Sacramento County would be less likely to expose Ms. Miller to any undue attention." (Id. ¶ 12.)

"The purpose for Plaintiff's contact with CPS was to give them a heads up regarding potential child neglect." (Pl.'s Opp'n Separate Statement Undisputed Material Facts ¶ 15, ECF No. 23-6 ("Admitted.").) Plaintiff told CPS that she "would appreciate a courtesy investigation" into the possibility of child neglect. (Pl.'s Decl. ¶ 15.) Plaintiff provided CPS further details regarding "unattended swimming" and the issue of the older child's illness and the younger child's "caretaking." (Id. ¶ 16.)

4

When Plaintiff called CPS, she believed that "the likely result of the Sacramento County CPS investigation would have been not only confidential, but also non-punitive." (Id. ¶ 28.) Plaintiff says she thought that "the case would have been closed . . . without publicity or punishment." (Id.)

In mid-April 2010, nine months after the call to CPS the previous summer, "Plaintiff had a discussion with Miller," in which Miller mentioned "the possibility of [Plaintiff's] demotion from Chief Deputy Director to Assistant Director." (Id. ¶ 32.) On July 12, 2010, Miller told Plaintiff she was being terminated as of September 30, 2010. (Id. ¶ 35.)

### III. DISCUSSION

#### A. Plaintiff's Rule 56(d) Request

Plaintiff contends each Defendant's summary judgment motion is premature, and that therefore under Rule 56(d) each motion should be denied or the hearing on each motion continued so that plaintiff has more time to conduct discovery. Specifically, Plaintiff states: "Defendants have refused to make available" Miller and Mindi Nunes, DESS's Human Resources Director who was involved in Plaintiff's termination, "for deposition before Plaintiff's deadline to oppose the summary judgment motion[s] has elapsed," and "[t]hese witnesses have exclusive knowledge of material facts and information that relate to Plaintiff's claims asserted in this action." ((Pl.'s Appl. 3:1-13.) Plaintiff further states that she "was only recently provided [105 pages of] highly-responsive and relevant documents that need to be reviewed so that pertinent information may be gleaned from them." (Id. at 3:14-21, 5:12-14 (citing Decl. Thomas B. Gill ("Gill Decl.") ¶10, ECF No. 20-1).)

1	Rule 56(d) prescribes: "If a nonmovant shows by affidavit or
2 declaration that, for specified reasons, it cannot present facts
3 essential to justify its opposition, the court may . . . defer
4 considering the motion or deny it." "To prevail under . . . Rule
5 [56(d)], [a] part[y] opposing a motion for summary judgment must make
6 (a) a timely application which (b) specifically identifies (c) relevant
7 information, (d) where there is some basis for believing that the
8 information sought actually exists." Emp'rs Teamsters Local Nos. 175 &
9 505 Pension Trust Fund v. Clorox Co., 353 F.3d 1125, 1129 (9th Cir.
10 2004). "The burden is on the party seeking additional discovery to
11 proffer sufficient facts to show that the evidence sought exists, and
12 that it would prevent summary judgment." Blough v. Holland Realty, Inc.,
13 574 F.3d 1084, 1091 (9th Cir. 2009). Further, a court may deny "further
14 discovery if the movant has failed diligently to pursue discovery in the
15 past." Chance v. Pac-Tel Teletrac Inc., 242 F.3d 1151, 1161 n.6 (9th
16 Cir. 2001).

17	Here, although Plaintiff's counsel avers that "material facts
18 and information are within the exclusive knowledge" of deponents Miller
19 and Mindi (Gill Decl. ¶ 8), he does not "identify the specific facts
20 that [their depositions] would . . . reveal[] or explain[] why those
21 facts would . . . preclude summary judgment." Tatum v. City & Cnty. of
22 S.F., 441 F.3d 1090, 1101 (9th Cir. 2006). Plaintiff's counsel makes a
23 similar inadequate showing concerning the recently produced 105 pages of
24 records. (See Gill Decl. ¶¶ 10-11.) Further, Plaintiff has not shown she
25 "diligently pursued" Miller and Mindi's depositions given that she
26 "began the process of coordinating with Defendants to set these
27 depositions in November 2012[,]" knowing the last hearing date for
28

6

motions prescribed in the October 7, 2012 Status Order was March 11, 2013. (Gill Decl. ¶8; see Chance, 242 F.3d at 1161 n.6.)

"For these reasons and because of the futility of further discovery which shall presently become evident, plaintiff's request for a continuance to allow further discovery" or, alternatively, for an order denying each Defendant's motion as premature, (ECF No. 20), is denied. Sipes v. Equitable Life Assurance Soc'y of U.S., No. C-94-3868-VRW, 1996 WL 507308, at *2 (N.D. Cal. Aug. 13, 1996).

B.  **First Amendment Retaliation Claim**

Since Plaintiff's First Amendment retaliation claim is the only claim conferring federal question subject matter jurisdiction, Miller's motion challenging this claim will be decided first. Plaintiff alleges in this claim that Miller retaliated against her in violation of the First Amendment to the United States Constitution by demoting her and then terminating her in retaliation for Plaintiff contacting the CPS about Miller's children. (Compl. ¶¶ 18-32, ECF No. 1.)

Miller argues entitlement to summary judgment on this claim contending, inter alia, that Plaintiff cannot establish that when she contacted CPS she was speaking about a matter of public concern. (Miller's Mot. 10:22.) Miller argues:

> Here, the speech at issue—Plaintiff[']s referral to Sacramento CPS regarding Miller's children—was not a matter of public concern because it could not have assisted in helping the public to evaluate the performance of either Pam Miller in her official capacity or the DESS. The very nature of the speech was of a highly confidential nature and would not have been made public under any circumstances nor did Plaintiff intend for the matter to become public. Plaintiff even admits that her speech was not intended to report any violation of state or federal law but was instead aimed at ensuring that any potential investigation remained in Sacramento as opposed to being forwarded to Yolo by operation of policy. In other words, Plaintiff wanted to keep individuals within DESS and the

7

1           community from learning about the referral she
made. Plaintiff's speech did not involve any matter
2           related to DESS, the efficiency of its service, or
any corruption or misconduct in the work place.
3           Plaintiff did not contact CPS to report any
violation of state or federal law nor did she
4           believe Pam Miller had violated an[y] state or
federal law. The speech solely related to Pam
5           Miller's relationship with her own child[ren] and
the propriety of the care afforded them.

(Miller's Mem. P.&A. Supp. Mot. Summ. J. ("Mot.") 11:7-20, ECF No. 17-1 (citations omitted).)

Plaintiff rejoins that "[c]hild abuse/neglect is a matter of public concern[;]" therefore, her "report of possible child neglect merits First Amendment projection." (Pl.'s Opp'n to Miller's Mot. ("Opp'n") 17:21, 19:9, ECF No. 22.) Plaintiff further counters: "whether speech is of 'public concern' or not is not related to the audience or to the edification of the public; rather, it turns on the concepts of content, form, and context." (Id. at 16:21-23 (footnote omitted).)

Miller replies that "[w]hile [she] agrees that the general issue of child neglect in society may be a matter of public concern when discussed in that broad sense and in a public way, [P]laintiff's . . . speech was not made in a public forum, was not intended to become public, was not intended to enlighten the public as to child neglect issues, nor was it intended to advance a conversation about child neglect issues." (Miller's Reply 3:25-4:2.) Miller argues: Plaintiff's "private concern, with a[n intended] private remedy, unrelated to the public in any regard[,] and of which the public would never have knowledge, cannot support [Plaintiff's] claim that [her communication with CPS] related to matters of public concern." (Id. at 4:23-26.)

The Ninth Circuit has established a "sequential five-step series of questions" to analyze a claim for First Amendment retaliation;

8

1 the first step is to determine "whether the plaintiff spoke on a matter
2 of public concern." Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009);
3 see also Anthoine v. N. Cent. Counties Consortium, 605 F.3d 740, 748
4 (9th Cir. 2010) ("The First Amendment shields a public employee if he
5 speaks as a citizen on a matter of public concern.").

6 "Speech involves a matter of public concern when it fairly can
7 be said to relate to any matter of political, social, or other concern
8 to the community." Huppert v. City of Pittsburg, 574 F.3d 696, 703 (9th
9 Cir. 2009) (alteration and internal quotation marks omitted). "Whether
10 an employee's speech addresses a matter of public concern must be
11 determined by the content, form, and context of a given statement, as
12 revealed by the whole record." Connick, 461 U.S. at 147-48 (emphasis
13 added). "Although necessarily driven by facts of a particular case, this
14 determination is one of law for the court." Roe v. City & Cnty. of S.F.,
15 109 F.3d 578, 584 (9th Cir. 1997). "[T]he plaintiff bears the burden of
16 showing that the speech [at issue] addressed a[ matter] of public
17 concern." Eng, 552 F.3d at 1070.

18 "[C]ontent is the greatest single factor in the Connick
19 inquiry." Havekost v. U.S. Dept. of Navy, 925 F.2d 316, 318 (9th Cir.
20 1991). To speak on a matter of public concern, the content of the
21 communication must refer "to allegations of conduct amounting to 'actual
22 or potential wrongdoing or breach of public trust.'" Desrochers v. City
23 of San Bernardino, 572 F.3d 703, 712 (9th Cir. 2009) (quoting Connick,
24 461 U.S. at 148). The content of a communication involves a matter of
25 public concern when it addresses "subjects that could reasonably be
26 expected to be of interest to persons seeking to develop informed
27 opinions about the manner in which an elected official[,] charged with
28 managing a vital governmental agency, discharges h[er]

1  responsibilities." City of San Diego v. Roe, 543 U.S. 77, 84 (2004) (per
2  curiam) (internal alteration omitted). The essence of the content
3  inquiry is whether the "'main thrust' of the speech in question is
4  essentially public in nature or private." Mitchell v. Hillsborough
5  Cnty., 468 F.3d 1276, 1283 (11th Cir. 2006) (citations omitted).

6  In addition to the communication's content, "the employee's
7  motivation and the chosen audience are among the many factors to be
8  considered" in determining whether the communication is a matter of
9  public concern. Johnson v. Multnomah Cnty., 48 F.3d 420, 425 (9th Cir.
10 1995).

> In a close case, when the subject matter of a statement is only marginally related to issues of public concern, the fact that it was made because of a grudge or other private interest or to co-workers rather than to the press may lead the court to conclude that the statement does not substantially involve a matter of public concern.

15 Id.

16 Here, the content of Plaintiff's communication to CPS
17 concerned the possible neglect of Defendant Miller's two daughters.
18 Specifically, Plaintiff contacted CPS "to give them a heads up regarding
19 potential child neglect" based on her concern that Defendant Miller's
20 children were left with a bed-ridden caretaker. (POSS ¶ 15.) Plaintiff
21 provided CPS further details regarding "unattended swimming," the older
22 daughter's illness, and the younger daughter's "caretaking." (DOSS
23 ¶ 45.) Plaintiff told CPS that she "would appreciate a courtesy
24 investigation" into the possibility of child neglect. (DOSS ¶ 43.)

25 While "[m]atters of . . . public safety [and child neglect]
26 are generally topics of public concern," a court "must go beyond this
27 blanket observation and review the precise content of [Plaintiff's]
28 speech." Miller v. Jones, 444 F.3d 929, 935-36 (7th Cir. 2006). The

1  precise content of Plaintiff's speech was that Miller was not providing
2  "acceptable care for her daughters while she was at work," (Decl.
3  Williams 7:13-15), which is not a matter "reasonably . . . expected to
4  be of interest to persons seeking to develop informed opinions about the
5  manner in which . . . an elected official . . . discharges h[er]
6  responsibilities." San Diego v. Roe, 543 U.S. at 84. Plaintiff's speech
7  concerned possible neglect in a private home, not "allegations of
8  conduct amounting to 'actual or potential . . . breach of public
9  trust.'" Desrochers, 572 F.3d at 712; see also San Diego v. Roe, 543
10 U.S. at 84-85 (holding a police officer's expressive off-duty conduct
11 was not a matter of public concern, reasoning "Roe's activities did
12 nothing to inform the public about any aspect of the [Police
13 Department]'s functioning or operation," such that "[t]here is no basis
14 for finding that [the speech] was of concern to the community as the
15 Court's cases have understood that term in the context" of public
16 employment); cf. Garcetti, 547 U.S. at 425-26 ("The dictates of sound
17 judgment are reinforced by the powerful network of legislative . . .
18 whistle-blower protection laws . . . available to those who seek to
19 expose wrongdoing," but "[w]e reject, however, the notion that the First
20 Amendment" makes every public employment dispute "a constitutional cause
21 of action . . . .").
22         Further, Plaintiff's chosen private audience and Plaintiff's
23 stated intent to keep the matter private, rather than "engag[e] in civic
24 discussion" further evince that Plaintiff did not speak as a citizen on
25 a matter of public concern. Garcetti, 547 U.S. at 419.
26         For the stated reasons, Miller has shown the absence of a
27 material issue of genuine fact on an essential element of Plaintiff's
28 First Amendment retaliation claim, i.e., that Plaintiff's communication

1  to CPS involved a matter of public concern. See Johnson v. Poway Unified
2  Sch. Dist., 658 F.3d 954, 961-62 (9th Cir. 2011) ("'[B]ecause these are
3  sequential steps,' a plaintiff's failure to satisfy a single one
4  'necessarily concludes our inquiry.'"). Therefore, Miller's motion for
5  summary judgment on Plaintiff's First Amendment retaliation claim is
6  granted.

7  **C.   State Law Claims**

8         Since summary judgment is granted in favor of Miller on
9  Plaintiff's only federal claim, the issue is reached whether
10 supplemental jurisdiction should continue being exercised over
11 Plaintiff's state claims. "[Supplemental] jurisdiction is a doctrine of
12 discretion, not of [a party's] right." United Mine Workers of Am. v.
13 Gibbs, 383 U.S. 715, 726 (1966).

14        The "discretion [whether] to decline to exercise supplemental
15 jurisdiction over state law claims is triggered by the presence of one
16 of the conditions in § 1367(c), [and] is informed by the . . . values of
17 economy, convenience, fairness and comity" as delineated by the Supreme
18 Court in Gibbs. Acri v. Varian Assocs., Inc., 114 F.3d 999, 1001 (9th
19 Cir. 1997) (en banc) (internal quotation marks omitted). "[I]n the usual
20 case in which all federal-law claims are eliminated before trial, the
21 balance of [the] factors to be considered . . . will point toward
22 declining to exercise jurisdiction over the remaining state-law claims."
23 Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

24        Three of the four Gibbs factors weigh against the continued
25 exercise of supplemental jurisdiction over Plaintiff's state claims.
26 Judicial economy does not favor continuing to exercise supplemental
27 jurisdiction since time has not been invested analyzing the state
28 claims. See Otto v. Heckler, 802 F.2d 337, 338 (9th Cir. 1986) ("[T]he

district court, of course, has the discretion to determine whether its investment of judicial energy justifies retention of jurisdiction or if it should more properly dismiss the claims without prejudice.") (citation omitted). Nor do the comity and fairness factors weigh in favor of exercising supplemental jurisdiction since "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." Gibbs, 383 U.S. at 726. Therefore, Plaintiff's state claims are dismissed without prejudice under 28 U.S.C. § 1367(c).

### III. CONCLUSION

For the stated reasons, judgment shall be entered in favor of Miller on Plaintiff's First Amendment retaliation claim, and Plaintiff's state law claims are dismissed without prejudice under 28 U.S.C. § 1367(c) as the date on which this order is filed. Therefore, this action shall be closed.

Dated: April 22, 2013

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge